# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID SEXTON | MEMORANDUM DECISION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |
| Plaintiff, | |
| v. | |
| | Case No. 2:17-cv-01008-JNP-BCW |
| POULSEN AND SKOUSEN P.C., ROBERT POULSEN, ROBERT REITZ, and DALE HITESMAN, | District Judge Jill N. Parrish |
| Defendants. | |

Before the court are three motions for summary judgment: (1) a motion brought by defendant Dale Hitesman, [Docket 34], (2) a motion brought by defendants Poulsen and Skousen P.C., Robert Poulsen, and Robert Reitz, [Docket 40], and (3) a motion brought by plaintiff David Sexton, [Docket 46]. The court DENIES the defendants' motions for summary judgment. The court also DENIES Sexton's motion for summary judgment.

## BACKGROUND

Both the defendants and the plaintiff have brought motions for summary judgment. In this section, the court recites the facts of the case relevant to the defendants' motions by resolving all disputes in favor of the plaintiff.

Sexton owned a mobile home. He lived in it with his disabled son, who is legally blind and suffers from cerebral palsy. In 2008 Sexton leased a site for his home from Evergreen Village. During the period of time relevant to this lawsuit, he paid $461 per month in rent for the lot.

On March 17, 2017, Evergreen Village served two inconsistent notices on Sexton. The first was a seven-day notice to cure a rule violation. It alleged that Sexton owned two unapproved, restricted-breed dogs that had attacked another resident. This document notified Sexton that he had seven days to cure the rule violation by removing the dogs. Otherwise, Evergreen Village would commence eviction proceedings. The seven-day notice stated that Sexton was required to continue paying rent.

The second document was a notice of lease termination. This document alleged that Sexton had violated a provision of the lease prohibiting "behavior by a resident . . . that substantially endangers the security, safety, well-being, or health of other persons in the park" by owning a dog[1] that had attacked another resident of the park. This second document stated that Sexton's lease agreement would be terminated upon service of the notice and that Sexton was required to "immediately" remove his mobile home and all residents thereof from the park.

Both notices were signed by Evergreen Village's attorney, Poulsen. Contrary to the allegations contained in these notices, Sexton was not the owner or caretaker of the dog referenced in these two notices.

On May 9, 2017, Poulsen, on behalf of Evergreen Village, filed a complaint against Sexton for unlawful detainer. Sexton received service of the complaint on May 11, 2017. The complaint alleged that Sexton began to unlawfully detain the premises on March 23, 2017, because he had failed to cure the violations referenced in the seven-day notice and had not vacated the premises.[2]

---

[1] While the seven-day notice referred to two dogs, the notice of lease termination stated that there was only one dog. Other filings in this case indicate that only one dog was at issue.

[2] The complaint is confusing because it references both the seven-day notice and the notice of immediate termination of the lease but does not explicitly specify which document actually terminated the lease. Because the complaint alleged that Sexton did not begin to unlawfully detain

The complaint requested immediate eviction and an award of treble damages under Utah Code § 78B-6-811 in the amount of $46.10 per day—or about triple the daily rent for the mobile home site.[3] Given that Utah Code § 78B-6-811(2)–(3) permits an award for triple the rent due under a lease "if the alleged unlawful detainer is after default in the payment" of rent, the complaint implicitly alleged that Sexton was behind on his rent payments and that Evergreen Village had been damaged by the missed payments.

The allegations of the complaint were not true. Sexton did not own or control the dog at issue, and he had not failed to cure the violations asserted in the seven-day notice. Moreover, he had continued to pay the amounts due under the lease and did not owe triple damages for unpaid rent starting on March 23, 2017. After receiving the summons and complaint, Sexton spoke to an Evergreen Village manager who told him that as long as he did not allow the dog at issue to return to the property, Evergreen would stop the eviction proceedings. Relying upon this representation, Sexton did not respond to the complaint.

On May 31, 2017, a Utah state court entered a default judgment against Sexton. The judgment awarded "Treble damages from March 23, 2017 to May 25, 2017" in the amount of $2,719.90,[4] attorney fees in the amount of $650, and court costs in the amount of $395. The total

---

the premises until March 23, 2017, it appears that the complaint rests upon a theory that the lease was terminated after a period of time to cure had lapsed. Sexton, however, had until March 24, 2017 to cure the dog violation.

[3] Poulsen clearly divided the monthly rent of $461 by 30 and then multiplied the result by 3 to arrive at this figure. A more accurate triple daily rental calculation can be achieved by multiplying the monthly rent by 12 and then dividing this sum by 365 before tripling the result to arrive at treble daily rental value of $45.47.

[4] Once again, the math is wrong. $2,719.90 represents treble damages for 59 days of unpaid rent. March 23, 2017 to May 25, 2017 amounts to 64 days of unpaid rent.

default judgment was for $3,764.90 with treble damages accruing at the rate of $46.10 per day until Sexton removed his mobile home and his family from Evergreen Village. On the same day, the court entered an order of restitution. The order commanded Sexton to vacate the lot he rented from Evergreen Village, remove his personal property, and restore possession of the premises to Evergreen Village within 15 days. The order further authorized a constable or sheriff "at Plaintiff's direction [to] enter the premises by force using the least destructive means possible to remove the Defendant(s), any personal property, and any persons claiming a right to occupancy from Defendant(s)." Under Utah law, a mobile home is personal property unless it is permanently affixed to real property and other conditions have been met. UTAH CODE § 70D-2-401. Because Sexton's mobile home was not permanently affixed, it was Sexton's personal property.

On June 16, 2017, Constables Reitz and Hitesman went to Sexton's mobile home and ordered him and his son to immediately leave. They represented that Sexton and his son were no longer allowed to enter the mobile home and that Sexton no longer owned it because it belonged to Evergreen Village as a result of the court's order. Reitz and Hitesman threatened to have Sexton and his son arrested if they returned to the property for any reason. Intimidated by these representations, Sexton and his son left the home as ordered. Reitz and Hitesman then forcibly entered the mobile home and changed the locks so that Sexton could not retrieve his property. Sexton was willing and able to comply with the court's order by removing the trailer but the Constables' threats to have him arrested prevented him from doing so.

On June 19, 2017, Poulsen filed an application for writ of execution to seize Sexton's mobile home in order to collect the $3,764.90 due under the default judgment. The application represented that the mobile home had an estimated value of $1,000. Poulsen also filed a document styled as a "praecipe" with the court. This document, signed by Poulsen, instructed any constable

or sheriff to change the locks on the mobile home and to take possession of personal property found in the home to be sold at a constable sale, even though the constables had already done so. On June 22, 2017, the court clerk entered a writ of execution directing any constable or sheriff to collect the default judgment "and to sell enough of Defendant's non-exempt personal property and real property" to satisfy the judgment.

Poulsen and constables Reitz and Hitesman advertised a constable's sale for the mobile home to occur on July 11, 2017. On July 5, 2017, Sexton objected to the writ of execution, arguing that the mobile home and most of his personal property was exempt from execution under Utah law. The court then ordered Poulsen and the constables to cease efforts to sell the home.

In early August 2017, Sexton found a buyer willing to purchase the mobile home for $18,000 and remove it from Evergreen Village. When Sexton attempted to remove the mobile home, constables Reitz and Hitesman were summoned to Evergreen Village. They arrived and prevented the sale. The constables asserted that they had the right to prevent Sexton from removing or selling the home and threatened to arrest Sexton if he tried to remove the home.

On August 17, 2017, Sexton's father went to Poulsen's office to pay off the default judgment. He tendered a check for $3,764.90 to individuals in Poulsen's office. He was also prepared to deliver a separate check for interest or any other amounts to fully satisfy the judgment. Poulsen's office staff declined to accept the check. Throughout this process, Poulsen did not return phone calls or provide an amount needed to pay off the judgment.

In early September 2017, Sexton sued Evergreen Village, Poulsen, Poulsen's law firm, constable Reitz, and constable Hitesman for violations of the federal Fair Debt Collection Practices Act (FDCPA) and the Utah Consumer Sales Practices Act (UCSPA). Sexton voluntarily dismissed the claims against Evergreen Village. Hitesman filed a motion for summary judgment for the

claims against him. Poulsen, Poulsen and Skousen P.C., and Reitz filed a separate motion for summary judgment. Finally, Sexton filed a motion for summary judgment arguing that he should prevail on his claims as a matter of law.

## ANALYSIS

## I.    THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The defendants assert that they are entitled to summary judgment on the two claims asserted against them.[5] The court first addresses the defendants' arguments regarding the FDCPA claim. It then turns to the UCSPA claim.

### A.    The FDCPA Claim

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "Because the FDCPA . . . is a remedial statute, it should be

---

[5] Hitesman attached an affidavit to his motion for summary judgment averring that he has been a constable since 1993. He then attached a number of documents to his reply brief affirming his appointment as a constable. Sexton filed an objection to the documents attached to the reply brief, arguing that the court should disregard this evidence. Hitesman filed a response, and Sexton filed a reply. Without seeking leave of the court, these two parties then filed at least four surreply briefs in which Sexton and Hitesman accused each other of being vexatious litigants and acting in bad faith. In the end, the petty disputes evidenced in the briefing on Sexton's objection are much ado about nothing. Hitesman provided evidence that he was a constable during the events relevant to this lawsuit in the form of an affidavit attached to his motion. Sexton did not provide any evidence to dispute this fact. Thus, the additional documents Hitesman attached to his reply brief are irrelevant to the motion for summary judgment. The court overrules Sexton's objections to the new documents because the issue is moot.

Sexton also objected to several documents attached to the reply brief filed by Poulsen, Poulsen and Skousen P.C., and Reitz for the same reasons. Sexton, however, did not argue why any of the documents were essential to the defendant's motion for summary judgment. Moreover, some of the new documents were presented as evidence by Sexton himself. Because the court does not rely upon any of the new documents attached to the reply brief, the court also overrules these objections as moot.

construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

Sexton asserts that the defendants violated three provisions of the FDCPA. First, he argues that they engaged in "conduct the natural consequence of which is to harass, oppress, or abuse [him] in connection with the collection of a debt." § 1692d. Second, Sexton contends that the defendants used "false, deceptive, or misleading representation[s] or means in connection with the collection of [a] debt." § 1692e. Third, he alleges that the defendants used "unfair or unconscionable means to collect or attempt to collect [a] debt." § 1692f.

The defendants argue that they cannot be held liable under the FDCPA for a variety of reasons. The court addresses each argument separately.

1) The Definition of "Debt"

First, the defendants argue that they cannot be held liable for violations of the FDCPA because they were not attempting to collect a "debt" as that term is defined under the Act. Under the FDCPA, "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The defendants assert that the default judgment of $3,764.90 for "treble damages," attorney fees, and court costs, together with $46.10 in daily damages until Sexton removed his mobile home, does not constitute a consumer debt that falls within this definition. Poulsen, in particular, admits that Sexton had continued to pay his rent and contends that he was merely pursuing an eviction action based upon a rule violation. Poulsen asserts that "[n]o rent, no money, and no financial agreements were sought to be enforced during those transactions leading to Evergreen obtaining a judgment."

This contention is patently false. The complaint sought "treble damages assessed pursuant to Utah Code Annotated, Section 78B-6-811 beginning March 23, 2017 at the rate of $46.10 per day," which is roughly the triple daily rent for the mobile home lot. The affidavit in support of the motion for default judgment also stated that Sexton "owes for treble damages assessed pursuant to Utah Code Annotated, Section 78B-6-811 . . . at the rate of $46.10 per day totaling $2,719.90 treble damages from March 23, 2017 to May 25, 2017." Utah Code § 78B-6-811(2) states that if a lessee defaults in an unlawful detainer action, the court shall "assess the damages resulting to the plaintiff." In particular, a landlord may recover treble damages for "amounts due under the [lease] contract, if the alleged unlawful detainer is after default in the payment of amounts due under the contract." § 78B-6-811(2)–(3). Because this statute permits treble damages for the harm suffered by the landlord in cases where the tenant has defaulted on rent payments, and because Poulsen clearly calculated the treble damages amount awarded in the default judgment from the rent due under the lease, the lion's share of the default judgment is attributable to Poulsen's representations that Sexton owed unpaid rent.[6] Rent qualifies as an obligation "of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes" within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a(5).

Poulsen's argument that the default judgment does not constitute consumer debt because Sexton had in reality satisfied his rent obligations rings hollow. The definition of "debt" includes

---

[6] At the hearing on this motion, Poulsen argued that the default judgment was for the rental value of the lot rather than the rent due under the lease. Setting aside the question of whether Utah Code § 78B-6-811 permits a judgment based on the rental value of the lot (even though, as Poulsen admits, Sexton paid his rent), Poulsen did not explain how a judgment for the rental value of the lot while Sexton lived on it would not be the functional equivalent of rent, and thus a consumer debt.

"any obligation or *alleged obligation* of a consumer to pay money." *Id.* (emphasis added). The fact that an alleged obligation is unfounded will not exempt a debt collector from liability.[7] The court concludes, therefore, that the default judgment at issue in this case qualifies as a "debt" under the FDCPA.

2)  The Definition of "Debt Collector"

The defendants also argue that they do not qualify as debt collectors under the FDCPA. The term "debt collector" includes any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). But the Act explicitly excludes from this definition, "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." § 1692a(6)(C). Both Reitz and Hitesman (the constable defendants) and Poulsen argue that they are exempt from liability under this definition because they are officers of the State of Utah attempting to collect a debt within the scope of their official duties. The constable defendants also argue that they are entitled to the benefit of an exclusion from the definition of "debt collector" for "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt."

---

[7] In making this argument, Poulsen tacitly admits that he obtained an unjust default judgment against Sexton. At best, he committed gross negligence by failing to find out whether Sexton had paid his rent or by failing to read and understand the clear language of Utah Code § 78B-6-811, which only permits treble damages for unpaid rent or damages actually incurred by the landlord. At worst, he committed a fraud on the court. Either way, Poulsen cannot profit from the fact that he obtained a default judgment for amounts Sexton did not owe. Indeed, obtaining a default judgment for amounts not actually owed could potentially be a deceptive or unconscionable act leading to liability under the UCSPA. See *Estrada v. Mendoza*, 275 P.3d 1024, 1028 (Utah Ct. App. 2012) (holding that an action under the UCSPA against a debt collector for allegedly obtaining inflated writs of garnishment was not barred by res judicata).

§ 1692a(6)(D). The court first addresses the constable defendants' arguments. The court then turns to Poulsen's argument.

i.      The Constable Defendants

The court agrees that constables are officers of the State of Utah. "To qualify as a constable, a person shall be certified as a special function peace officer in the state." UTAH CODE § 17-25a-2(1). Constables are appointed by either a city or county, and their position may be revoked at any time for cause or if the constable's peace officer certification is ever suspended or revoked. § 17-25a-1. A constable may execute the orders of a judge or writs issued by the clerk of the court by seizing and disposing of property, entering a home by force and removing a tenant, or serving a warrant of arrest. §§ 17-25-1(1), 17-25a-3(2), 78B-6-812(1), (3); UTAH R. CIV. P. 64(a)(7), (d). While performing official duties, a constable must prominently display a badge or other credentials identifying the person as a constable and stating the person's name and the county or city that appointed the constable. § 17-25-6(1). In short, Utah endows constables with the authority to conduct official actions on behalf of a court that other private individuals cannot legally perform.

While it appears that the Tenth Circuit has not addressed this issue, the Third Circuit has confirmed that individuals who perform the duties of a constable are officers of the state. The court in *Heredia v. Green*, 667 F.2d 392, 393, 394 (3d Cir. 1981), held that a Philadelphia landlord and tenant officer, who performed many of the same duties of a Utah constable, was an officer of the state within the meaning of 15 U.S.C. § 1692a(6)(C). *See also Heredia v. Green*, 504 F. Supp. 896, 898 (E.D. Pa. 1980) (finding that a landlord and tenant officer performed many of the same duties previously performed by a constable). This court agrees that a constable is an officer of the state who is excluded from the definition of "debt collector" under the FDCPA.

This conclusion, however, does not automatically shield the constable defendants from liability. An officer of the state is immune from liability under the FDCPA only while collecting a debt in the performance of his or her official duties. A constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions. The constable defendants argue that all of their actions were sanctioned by the order of restitution entered by the state court on May 31, 2017 and the writ of execution entered by a court clerk on June 22, 2017. The court disagrees.

First, there is evidence that the constable defendants performed actions that were not authorized by the order of restitution, which permitted the constables to remove the mobile home, Sexton, and any other residents from the lot in order to restore possession to Evergreen Village. Instead of removing the mobile home and storing it until Sexton could claim it after paying storage costs, as contemplated by Utah Code § 78B-6-812(3), the constables seized the mobile home and all of its contents, changed the locks, and told Sexton that the trailer belonged to Evergreen Village. In other words, the constables seized the mobile home and its contents for the benefit of Evergreen Village rather than removing it. These actions went beyond the scope of the order of restitution.

Second, Sexton produced evidence that the constable defendants exceeded the scope of the writ of execution, which authorized them to seize and sell enough of Sexton's "non-exempt personal property and real property" to satisfy the default judgment. Sexton argues that his mobile home should have been excluded from seizure to satisfy the debt under the homestead exemption. "An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding . . . $30,000 in value if the property claimed is the primary personal residence of the individual." § 78B-5-503(2)(a). This homestead exemption applies to "a mobile home in which the claimant resides." § 78B-5-503(2)(c). Sexton also argues that because the

application for writ of execution valued the mobile home at $1,000, the constables should have known that it was completely exempt from seizure under the terms of the writ of execution.

The constable defendants argue that the homestead exemption did not apply for two reasons. First, they assert that the mobile home was no longer Sexton's primary residence when the June 22, 2017 writ of execution issued because the constables had evicted him six days earlier. In other words, the constables argue that they could accomplish in two steps what they could not legally do in one step. The court disagrees. As noted above, the constables exceeded the instructions given by the court to remove the mobile home from the lot when they seized the home and evicted Sexton from his own trailer instead. An illegal act cannot be the basis for depriving Sexton of the homestead exemption. Moreover, Sexton's six-day absence from his home due to the eviction is insufficient to fundamentally change its status as his primary residence.

The constable defendants also argue that Utah law permitted them to seize and hold the mobile home despite the homestead exemption. According to the constable defendants, Utah law placed the burden on Sexton to prove that the seized property was exempt. They point to Rule 64E(d) of the Utah Code of Civil Procedure, which permits a defendant to request a hearing on a writ of execution. At this hearing, the court determines whether any seized property is exempt. UTAH R. CIV. P. 64E(d)(2). If the court determines that any property is exempt at the hearing, it then enters an order directing the constable to release the property. *Id.* The constable defendants note that in this case, Sexton objected to the writ of execution issued against him and the state court set a hearing for August 1, 2017. But the parties later cancelled the hearing to accommodate settlement negotiations. The constable defendants contend that because the state court never entered an order directing them to release the mobile home as exempt property, their actions

designed to deny Sexton possession of his mobile home and prevent him from removing or selling it were legal and within the scope of their official duties.

If the writ of execution had directed the constables to seize the mobile home or to seize any property that they wished to seize, the constables' argument would have merit. Under that scenario, the constables could have legally seized the mobile home despite its exempt status and the constables would have been required to release it only if the state court found that it was exempt and ordered the constables to release the mobile home. But the writ of execution did not direct the constables to seize the mobile home. It directed them to seize and sell only "non-exempt personal property and real property." The writ placed the onus on the constables to determine which of Sexton's property was exempt, which of his property was non-exempt, and to seize and sell only the non-exempt property. Because the writ of execution defined, at the outset, the limits of the constables' authority to seize and hold property, the restrictions set forth in the writ trump any procedures outlined in Rule 64E. The constables, therefore, exceeded the scope of their authority under the writ of execution by continuing to deny Sexton possession of the mobile home, which was subject to the homestead exemption.

In sum, because there is evidence that the constable defendants exceeded their authority under the order of restitution and the writ of execution, they are not entitled to summary judgment under the officer of the state exemption to liability under 15 U.S.C. § 1692a(6)(C).[8]

---

[8] In his reply brief, Constable Hitesman also argued that the mobile home was not subject to the homestead exemption because Sexton did not serve a "a signed and acknowledged declaration of homestead." *See* UTAH CODE § 78B-5-504(1). Hitesman's argument appears to be that Sexton's declaration of homestead was not valid because it was not notarized. At the hearing on this motion, Hitesman abandoned this argument.

Finally, the constable defendants argue that they are exempt from liability under 15 U.S.C. § 1692a(6)(D), which excludes from the definition of "debt collector" "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." The court agrees that the constables cannot be liable for serving process. But, as noted above, Sexton produced evidence that the constables took other actions to collect a debt from him. Thus, the process-server exemption does not entitle the constables to summary judgment on the FDCPA claim.

### ii. Poulsen

Poulsen also argues that he is an officer of the State of Utah because, as a licensed attorney, he is considered an officer of the court. He points to the language of the attorney's oath, in which attorneys swear to "discharge the duties of attorney and counselor at law as an officer of the courts of this State with honesty, fidelity, professionalism, and civility; and . . . [to] faithfully observe the Rules of Professional Conduct." Under Poulsen's argument, all attorneys would be exempt from the definition of debt collector under the FDCPA. The court disagrees.

Poulsen does not cite any caselaw supporting his argument, and the court is unable to find any cases addressing this specific point either. The court concludes, however, that the term "officer of the court" as used in the attorney oath is meant to remind attorneys of their duties of honesty, professionalism, and civility towards the court. Lawyers are not literally agents of the court. They are the agents of their clients. Moreover, the Tenth Circuit has clearly held that "[a]ttorneys engaged in the collection of debts are debt collectors subject to liability under the FDCPA." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *accord Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"). The court is

bound by this holding and rejects Poulsen's argument that he is not a debt collector under the FDCPA.[9]

### 3) Agents of Evergreen Village

In a section of their brief comprised of two sentences, Poulsen and Skousen P.C., Poulsen, and Reitz argue that they cannot be held liable because they were agents of Evergreen Village, which has been voluntarily dismissed from the case. Hitesman similarly argues in a conclusory manner that he cannot be liable because Evergreen Village has been dismissed. The defendants do not cite any caselaw in support of this argument.

This argument is inadequately briefed. And to the extent that the court understands the argument, it is without merit. The FDCPA provides that debt collectors may be held liable if they violate the provisions of the Act while collecting a debt. 15 U.S.C. § 1692k(a). By definition, a debt collector is an individual or business that collects debts owed or allegedly owed to another individual or business. *See* § 1692a(6). The fact that Evergreen Village—the entity to which the debt was owed—has been dismissed from the action does not affect the claims against parties that acted as debt collectors for the company.

---

[9] In their reply brief, Poulsen and Poulsen and Skousen P.C. briefly argue for the first time that they do not fit within the definition of "Debt Collector" because Sexton did not present evidence that they "regularly" collected consumer debts. But the defendants waived this argument by waiting until the reply brief to assert it. *See Hill v. Kemp*, 478 F.3d 1236, 1250 (10th Cir. 2007) ("[A]rguments and issues presented [in a reply brief] are waived."); *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla.*, 960 F. Supp. 2d 1254, 1265 (N.D. Okla. 2013) (applying this rule to motions filed in the district court). Waiver is particularly appropriate in this case. Sexton did not present evidence of the regularity of Poulsen's and Poulsen and Skousen P.C.'s debt collection activity because the defendants did not assert this argument until it was too late for Sexton to respond.

4) Res Judicata

Finally, Poulsen and Skousen P.C., Poulsen, and Reitz argue that Sexton's FDCPA clam is barred by res judicata. They contend that by asserting an FDCPA claim, Sexton is mounting an improper collateral attack on the default judgment that was entered by the state court. The court disagrees.

"Res judicata is an affirmative defense on which the defendant has the burden to set forth facts sufficient to satisfy the elements." *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). "Res judicata requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit." *Id.*

The defendants in this action cannot prove all of the elements of res judicata. Poulsen and Skousen P.C., Poulsen, and Reitz were not parties to unlawful detainer action against Sexton. More importantly, the same cause of action is not at issue in the two lawsuits. The issues in the prior unlawful detainer action were whether Sexton should be evicted and whether he owed money to Evergreen Village. The issue in this lawsuit is whether the defendants violated the FDCPA while attempting to collect a debt or alleged debt. Because the claims are not the same, res judicata does not apply. See *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 796–98 (S.D. Ohio 2006) (rejecting res judicata challenge to an FDCPA lawsuit based upon efforts to collect a default judgment in a debt collection action because the parties and claims in the two litigations were not identical).

5) Conclusion

For the reasons stated above, the court denies the defendants' motions for summary judgment on the FDCPA claim.

B.    *The UCSPA Claim*

The defendants also argue that they are entitled to summary judgment on the UCSPA claim. The court first addresses whether this statute may be applied to debt collectors. The court then turns to the argument asserted by the defendants.

1)  The Applicability of the UCSPA to Debt Collectors[10]

One of the main purposes of the UCSPA is "to protect consumers from suppliers who commit deceptive and unconscionable sales practices." UTAH CODE § 13-11-2(2). Thus, a "deceptive act or practice by a supplier in connection with a consumer transaction violates [the UCSPA] whether it occurs before, during, or after the transaction." § 13-11-4(1). Additionally, an "unconscionable act or practice by a supplier in connection with a consumer transaction violates [the UCSPA] whether it occurs before, during, or after the transaction." § 13-11-5(1). In short, the Act protects consumers from deceptive and unconscionable acts or practices "by a supplier in connection with a consumer transaction." The threshold questions before the court are (1) whether a person enforcing the lease agreement between Sexton and Evergreen Village can be a "supplier"

---

[10] The court asked the parties to file simultaneous briefs on the issue of whether the defendants could be deemed to be "a supplier in connection with a consumer transaction." [Docket 104]. Defendant Hitesman (to a lesser extent) and defendants Poulsen and Skousen P.C., Poulsen, and Reitz (to a greater extent) went beyond the scope of the court's order. They briefed other issues previously raised and even asserted entirely new arguments. Because this briefing went beyond the scope of the court's order and is unfair to the plaintiff, the court disregards it.

and (2) whether any enforcement actions taken by the person are "in connection with a consumer transaction."

First, the defendants are suppliers within the meaning of the UCSPA. The Act defines "supplier" to mean "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions." § 13-11-3(6). Under this expansive definition, a party does not have to supply a good or service to a consumer to qualify as a supplier. A party that regularly enforces consumer transactions is also deemed to be a supplier. Thus, constables, attorneys, and law firms that regularly collect debts incurred from consumer transactions are suppliers because they enforce those transactions.

Second, the enforcement actions taken by the defendants are "in connection with a consumer transaction." The underlying agreement at issue in this case is the lease agreement between Sexton and Evergreen Village, which qualifies as a consumer transaction under the UCSPA. *Woodhaven Apartments v. Washington*, 942 P.2d 918, 923 (Utah 1997) ("Clearly, the UCSPA applies to leases of residential property."). The question, then, is whether the alleged deceptive or unconscionable acts by the defendants were performed "in connection with" the lease. Because the lease agreement is the document that that purportedly gave the defendants the legal right to evict Sexton, collect damages for unpaid rent, and seize his mobile home, the actions of the defendants are connected to a consumer transaction. Thus, the plain language of the UCSPA confirms that the Act may be applied to individuals or entities that enforce residential leases through evictions and property seizures.

Although other courts have not explicitly conducted a statutory analysis to determine whether the UCSPA applies to debt collectors, federal courts have applied the Act to individuals who enforce consumer transactions through collection efforts. *See, e.g.*, *Heard v. Bonneville Billing*

*& Collections*, 216 F.3d 1087 at *2 (10th Cir. 2000) (unpublished table decision) (affirming a district court's conclusion that a debt collection company "violated the UCSPA which prohibits a 'supplier' from knowingly and intentionally committing deceptive acts or unconscionable practices in connection with a consumer transaction"); *Brown v. Constantino*, No. 2:09CV00357DAK, 2009 WL 3617692, at *2–4 (D. Utah Oct. 27, 2009) (analyzing the Ohio and Kansas analogs to the UCSPA and concluding that "attorneys and law firms that are regularly engaged in the business of collecting consumer debt can be suppliers under the UCSPA"). This court agrees and concludes that individuals and entities that enforce a lease agreement are "suppliers" that may be liable under the UCSPA.

2)      An Act Required or Specifically Permitted by Federal Law

The UCSPA does not apply to "an act or practice required or specifically permitted by or under federal law, or by or under state law." UTAH CODE § 13-11-22(1)(a). The defendants argue that because they are entitled to summary judgment on the FDCPA, this statute provides that they also cannot be held liable under the UCSPA. The court disagrees. Setting aside the question of whether avoiding liability under the FDCPA is the same thing as performing an act "required or specifically permitted by . . . federal law," the court has determined that the defendants are not entitled to summary judgment on the FDCPA claim. Thus, the defendnats are not entitled to summary judgment on the UCSPA claim.

## II.      THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Sexton moves for summary judgment in his favor on the FDCPA and UCSPA claims. He asserts that the undisputed evidence shows that the defendants violated the FDCPA by using "false, deceptive, or misleading representation[s] or means in connection with the collection of [a] debt." 15 U.S.C. § 1692e. Sexton also argues that he is entitled to summary judgment because the

defendants violated the FDCPA by engaging in "conduct the natural consequence of which is to harass, oppress, or abuse [him] in connection with the collection of a debt," § 1692d, and by using "unfair or unconscionable means to collect or attempt to collect [a] debt," § 1692f. He also contends that the defendants, as a matter of law, violated the UCSPA by committing deceptive or unconscionable acts to collect a debt. *See* UTAH CODE §§ 13-11-4 and -5.

Sexton argues that the defendant's acts of seizing the mobile home to satisfy a debt, preventing him from selling the home, attempting to collect exempt proceeds from the sale, and refusing to provide a payoff amount for the judgment violated these provisions of the FDCPA and UCSPA. Sexton, however, wishes to reserve for a jury the determination of damages. The court denies Sexton's motion for summary judgment because he failed to show that he should prevail as a matter of law on the mixed questions of law and fact imbedded in these statutory claims.

Even where underlying objective facts are free from dispute, mixed questions of law and fact imbedded in a cause of action can only be resolved on summary judgment where "reasonable minds cannot differ" on the answer to the mixed question. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *accord Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998). Questions of whether a particular act is oppressive, abusive, unfair, deceptive, or unconscionable under the FDCPA or UCSPA are mixed questions requiring the fact-finder to apply the facts to a legal standard. Moreover, a plaintiff must prove that any false representations in connection with the collection of a debt are material. *Maynard v. Cannon*, 401 F. App'x 389, 397 (10th Cir. 2010) (unpublished) ("The FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless."); *D'Avanzo v. Glob. Credit & Collection Corp.*, No. 10-CV-01572-RPM-CBS, 2011 WL 2297697, at *4 (D. Colo. Apr. 18, 2011), *report and recommendation adopted*, 2011 WL 2292190 (D. Colo. June 9, 2011). The

materiality of a false statement is also a mixed question. *TSC*, 426 U.S. at 450 ("The issue of materiality may be characterized as a mixed question of law and fact . . . ."); *Wagnon*, 146 F.3d at 768 ("The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact.").

Despite the fact that Sexton's claims under the FDCPA and UCSPA involve mixed questions of law and fact, he does not analyze whether reasonable minds could differ as to the answer to these mixed questions. Absent briefing, the court declines to conduct this analysis sua sponte.

The court also denies Sexton's motion for another reason. Sexton asserts that four separate defendants are liable as a matter of law under multiple provisions of the FDCPA and UCSPA for a number of different actions. In order to properly resolve Sexton's motion for summary judgment, the court must determine whether each defendant is liable under each provision of the FDCPA and UCSPA for each of the allegedly prohibited acts. Despite the complexity of this task, Sexton does not differentiate between the four defendants in his motion for summary judgment. He repeatedly argues generally that "the defendants" are collectively liable for multiple actions related to the collection of a debt. Because of Sexton's ubiquitous use of the term "the defendants" throughout his brief, it is difficult to pin down precisely which defendant did what to establish liability.

The court, therefore, denies Sexton's motion for summary judgment on his FDCPA and UCSPA claims.

## CONCLUSION

The court DENIES (1) the motion for summary judgment brought by defendant Hitesman, [Docket 34], (2) the motion for summary judgment brought by defendants Poulsen, Poulsen and

Skousen P.C., and Reitz, [Docket 40], and (3) the motion for summary judgment brought by plaintiff Sexton, [Docket 46].

Signed March 19, 2019.

BY THE COURT

Jill N. Parrish
United States District Court Judge