IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID SEXTON<br><br>    Plaintiff,<br><br>v.<br><br>POULSEN AND SKOUSEN P.C., ROBERT POULSEN, ROBERT REITZ, and DALE HITESMAN,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO MODIFY THE SCHEDULING ORDER AND DENYING MOTIONS FOR LEAVE TO AMEND ANSWERS TO THE COMPLAINT**<br><br>Case No. 2:17-cv-01008-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court are motions brought by defendants Robert Reitz and Dale Hitesman (constable defendants) and defendants Poulsen and Skousen, P.C. and Robert Poulsen (Poulsen defendants) to modify the scheduling order. ECF Nos. 139, 169. The constable defendants and the Poulsen defendants also move for leave to amend their answers to plaintiff David Sexton's complaint. ECF Nos. 137, 147. The court DENIES the motions brought by the defendants.

## BACKGROUND

Sexton sued Poulsen and Skousen, P.C.; Poulsen; Reitz; and Hitesman, alleging claims for violations of the Fair Debt Collection Practices Act and for violations of the Utah Consumer Sales Practices Act. Poulsen is a lawyer. He and his law partner filed an answer on behalf of all defendants. Later, Hitesman, acting pro se, filed a separate answer on behalf of himself.

On January 4, 2018, a magistrate judge entered a scheduling order. The order set the deadline to amend the pleadings for April 19, 2018. The deadline for fact discovery was set for June 7, 2018, and the deadline for expert discovery was set for September 28, 2018. On July 20, 2018, the parties stipulated to extend the fact discovery deadline until October 19, 2018. A

magistrate judge granted the motion and entered a new scheduling order to reflect the new fact discovery deadline. All other deadlines remained the same. It appears that the parties choose to conduct little discovery before the deadlines in the amended scheduling order had passed. Indeed, no party deposed a single witness.

The defendants and Sexton filed competing motions for summary judgment. No party filed a Rule 56(d) motion requesting that the court defer considering the motion or allow additional discovery. And no party requested a modification of the scheduling order or a further extension of the discovery deadlines. On March 19, 2019, the court issued an order denying all motions for summary judgment. Because all discovery deadlines and deadlines for filing dispositive motions had expired, the court scheduled a hearing for April 3, 2019 for the sole purpose of setting a trial date. At the hearing, counsel for Sexton indicated that he had just received a settlement offer and requested additional time to discuss the offer with his client. Accordingly, the court did not set a trial date at that time and ordered the parties to file a status report within 14 days. Sexton filed a status report stating that the parties requested more time to continue settlement discussions.

On June 12, 2019, pursuant to the agreement of all parties, the court referred this case to a magistrate judge for a settlement conference. On October 22, 2019, a settlement conference was held, but the parties did not reach a settlement. The court then set a scheduling hearing for November 12, 2019 to establish a trial date. But counsel for Sexton could not attend the hearing, and it was stricken.

On December 2, 2019, before the court had the opportunity to reschedule the hearing, new counsel appeared on behalf of the two constable defendants, Reitz and Hitesman. On January 2, 2020, the constable defendants moved for leave to file an amended answer adding a number of new affirmative defenses. On January 13, 2020, about 15 months after the close of discovery, the

constable defendants moved to reopen discovery. On January 29, 2020, the Poulsen defendants obtained new counsel. On the same day, the Poulsen defendants moved to amend their answer to add a number of new affirmative defenses. On March 13, 2020, the Poulsen defendants also moved to reopen discovery. Sexton opposed the motions to file amended answers and to reopen discovery.

## ANALYSIS

### I. MOTIONS TO REOPEN DISCOVERY

The constable defendants and the Poulsen defendants filed motions to reopen discovery. They state that they conducted very little discovery during the period of time provided in the court's scheduling orders because they assumed that they would either prevail on summary judgment without the benefit of discovery or settle the case on terms that they were willing to accept. Because neither of these scenarios materialized, the defendants move for leave to plead numerous new affirmative defenses, reopen discovery, and then file another round of motions for summary judgment. In other words, the defendants are asking for a mulligan. Because they did not prevail on their previously filed dispositive motions, they want to restart the litigation near square one.

The Tenth Circuit has identified a number of factors that courts should consider before reopening discovery, including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). The court evaluates each of these considerations in turn.

    *A.*    *Immanence of Trial*

The first consideration—whether trial is imminent—has been complicated by the COVID-19 pandemic. The court ruled on the motions for summary judgment on March 19, 2019. At that point, the only step remaining in the litigation was to set a trial date. But the parties asked for time to conduct settlement negotiations, so a trial date was not set at that time. When Sexton notified the court that settlement negotiations had failed, the court again set a hearing to establish a trial date. Before a scheduling conference could be held, however, the defendants filed motions to amend their answers and to reopen discovery.

While the parties were in the process of briefing these motions, the COVID-19 pandemic hit Utah. On March 16, 2020, the District of Utah closed the courthouse and cancelled all trials. The courthouse remains closed to all civil trials, and it is difficult to predict when the court can resume jury trials. Accordingly, the trial is not currently eminent. But the same pandemic that prevents the court from holding a trial in the near future would also hamper discovery. In-person depositions are likely not safe at the present. Thus, depositions may be delayed for nearly the same amount of time as the jury trial. Because the current pandemic has delayed both the trial and the ability to conduct discovery, this factor is neutral.

    *B.*    *Opposition to Request to Reopen Discovery*

The second consideration is whether the request to reopen discovery is opposed. Because Sexton has strongly opposed reopening discovery, this factor weighs against granting the defendants' motions.

    *C.*    *Prejudice to the Non-moving Party*

The third consideration is whether reopening discovery would prejudice Sexton. He argues that the delay caused by reopening discovery would prejudice him by further delaying the

resolution of this lawsuit. The court agrees. The defendants have not presented a focused discovery plan. Instead, they request carte blanche to conduct all of the discovery they neglected to perform during the initial discovery period. The defendants also ask for an opportunity to refile dispositive motions. This would essentially set the case back to square one, dramatically increasing the cost to pursue the lawsuit and the time it will take to arrive at a resolution. Accordingly, this factor weighs against reopening discovery.

      D.      *Diligence in Obtaining Discovery*

The fourth consideration—diligence in obtaining discovery in the period provided by the initial discovery period—weighs heavily against reopening discovery. The defendants admit that they made a strategic choice not to conduct discovery during the time allotted by the court because they were confident that they would either prevail on summary judgment or reach a settlement. Thus, they plainly were not diligent in pursuing discovery. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990) (affirming denial of motion to reopen discovery because "the plaintiffs did not make diligent use of the long period the court originally provided for discovery").

Additionally, the constable defendants did not move to reopen discovery until 15 months after the fact discovery cutoff date. The Poulsen defendants waited almost 17 months. This lack of diligence in moving to reopen discovery also weighs against granting the motions to reopen.

      E.      *Foreseeability of the Need for Additional Discovery*

The fifth consideration is whether the need for additional discovery was foreseeable in light of the time allowed for discovery. In this case, the answer is clearly yes. An unexpected event or newly unearthed facts did not trigger the need for additional discovery. The defendants did not ask to extend the deadlines pending a ruling on dispositive motions or the outcome of a settlement conference. They merely ignored them. The defendants simply decided not to conduct discovery

because they assumed that they would prevail on summary judgment or settle the case. But a failure to completely resolve the case through dispositive motions or to negotiate an acceptable settlement is entirely predictable. Accordingly, this factor weighs against reopening discovery.

    F.    *Likelihood that Discovery Would lead to Relevant Evidence*

The defendants have not shown that the sixth and final factor—the likelihood that discovery will lead to relevant evidence—tilts in its favor. The defendants have not laid out a discovery plan or explained what discovery they seek to conduct. Nor have they identified any documents in Sexton's possession that they would like to discover.

The constable defendants reference the need for discovery regarding their proposed new affirmative defenses. But they fail to adequately explain how Sexton could have any information regarding affirmative defenses that the defendants would have to prove at trial. Instead, Sexton, who opposes reopening discovery, would need discovery to explore the basis for the proposed new affirmative defenses.

In short, given the lack of discovery in this case, there is certainly the possibility that relevant evidence could be uncovered if discovery is reopened. However, it appears that the main thrust of the motions to reopen discovery is to permit discovery regarding the new affirmative defenses proposed by the defendants. The moving parties have not shown that they would be able to acquire any relevant evidence from Sexton regarding these proposed defenses.

    G.    *Weighing the Considerations*

After weighing these considerations, the court determines that they militate against reopening discovery. The defendants' lack of diligence in conducting discovery during the period of time allotted by the scheduling orders and their lack of diligence in moving to reopen discovery weigh heavily against modifying the discovery order. The court agrees with Sexton that the

defendants essentially want to start the litigation over by pleading new affirmative defenses, conducing all of the discovery they strategically neglected the first time, and filing new dispositive motions. The delay occasioned by such a drastic modification of the scheduling order would undoubtably prejudice Sexton.

The Poulsen defendants cite Supreme Court case law emphasizing the importance of discovery in modern litigation. *See Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947). The court agrees that discovery is important. But the court cannot force the parties to use the discovery tools available to them; and here, the defendants made a strategic decision to forego discovery. The defendants also argue that the utter lack of discovery in this case is a reason to restart the litigation. But under this logic, the more a party disregards its discovery opportunities, the more likely he or she is to get a hall pass for the neglect.

Accordingly, the court denies the motions to reopen discovery. The court will set a scheduling conference to set a trial for the first available date.

## II. MOTIONS FOR LEAVE TO AMEND ANSWERS

In conjunction with their motions to reopen discovery, the defendants also moved for leave to amend their answers. "The court should freely give leave [to amend pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted). The court determines that justice does not require granting leave to amend here because of the defendants' undue delay and because amendment would cause undue prejudice to Sexton.

First, the defendants waited too long to request leave to amend. The defendants filed answers to the complaint on September 29, 2017 and November 22, 2017. The deadline to move to amend the pleadings was April 19, 2018. The discovery deadline passed on October 19, 2018, and the dispositive motion deadline passed on December 31, 2018. On January 2, 2020—more than 20 months after the deadline to move to amend pleadings and more than 14 months after discovery closed—the constable defendants moved to amend their answer. The proposed amended answer includes a number of new affirmative defenses. On January 29, 2020, the Poulsen defendants also moved to amend their answer to include many new affirmative defenses.

The defendants do not assert that they discovered new information that revealed the need for additional defenses. Their only explanation for the delay in moving to amend is that they thought that amendment would be unnecessary because they anticipated either winning on summary judgment or settling the case. But these assumptions are not valid excuses to delay filing a motion for leave to amend. Nor can the defendants use the excuse that they hired new counsel. Hiring new attorneys does not reset the litigation. *Cf. Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) ("[C]lients . . . are usually bound by their lawyers' actions—or, as here, inactions."). Thus, the long delay in seeking leave to amend is not justified under the facts of this case.

Second, amending the defendants' answers at this stage of the litigation would subject Sexton to undue prejudice. If the court were to permit amendment without reopening discovery, Sexton would be prejudiced because he would not be able to discover relevant information regarding the numerous new affirmative defenses. But if the court were to permit amendment and reopen discovery, the litigation would essentially start over. As discussed above, this would unduly prejudice Sexton by dramatically delaying the resolution of this action and by increasing the cost

of the lawsuit. And by restarting the litigation, all the effort the parties had expended in litigating dispositive motions would largely be wasted.[1]

Thus, the court denies leave to amend the defendants' answers.

## CONCLUSION

For the above stated reasons, the court DENIES the motions to modify the scheduling order. ECF Nos. 139, 169. The court also DENIES the motions for leave to amend the defendants' answers. ECF Nos. 137, 147.

Signed November 23, 2019.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[1] In particular, Sexton would be prejudiced by the constable defendants' proposed governmental immunity affirmative defense. Had the constable defendants pled this defense in a timely manner, Sexton would have had an opportunity to comply with the requirements of the Governmental Immunity Act of Utah. Allowing the constable defendants to plead governmental immunity at this late date would complicate Sexton's compliance with this Act.